UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES | Crim. No. 03-10355-MBB/DPW |
| v. | |
| CARMINE D'AMELIO, a/k/a Junior | |

### GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL DISCLOSURE OF INFORMATION PURSUANT TO LOCAL RULE 116.6(A) AND REQUEST FOR EXPEDITED HEARING ON THIS MOTION[1]

The United States of America, by and through its attorney, the United States Attorney for the District of Massachusetts, hereby respectfully files its Opposition to the February 12, 2004 Motion to Compel Disclosure of Information Pursuant to Local Rule 116.6(A) and Request for Expedited Hearing on this Motion ("Motion") of Defendant Carmen D'Amelio ("D'Amelio"). For the reasons set forth below, this Court should reject D'Amelio's Motion.

---

[1] By filing its Opposition in advance of the 14-day requirement of L.R. 7.1(B)(2) and 116.3(A), the government does not waive its right to file its Opposition later. This timing does, however, moot D'Amelio's request that the government be required to file its response in 7 calendar days and the Court should accordingly dismiss D'Amelio's Motion to that extent. Likewise, the government has not filed this Opposition under seal nor has it elected to serve D'Amelio's counsel with only a redacted version. See D. Mass. L.R. 116.6(A). The government has taken these actions in this instance without prejudice to its greater rights under the Local Rules.

As set forth in greater detail in the December 3, 2003 Affidavit of Detective Lieutenant John Tutungian in Support of Pretrial Detention filed in Crim. No. 03-10356-MLW,[2] Simone and Gioaachini are both LCN Soldiers. Both men have criminal histories with proven violence. Simone pleaded guilty to his role in the brutal 1981 LCN-engineered murder of Angelo Patrizzi whose badly decomposed body was discovered in the trunk of a car in the parking lot of a motel in Lynn, Massachusetts. Patrizzi died of strangulation after his legs had been tightly hog-tied posteriorly to his neck. (See Tutungian Aff. at 8.) Similarly, Gioacchini has a 1990 conviction in this Court for LCN-related racketeering and, in connection with the investigation resulting in the Simone Indictment, was intercepted as he discussed his ongoing rent-collection activities - LCN activities in which LCN Soldiers like Gioacchini collect tribute or rent payments from bookmakers who need LCN permission to operate. (Id. at 36-38.) These payments are inherently extortionate, involving the threatened or actual use of violence. (Id. at 6.)

After conducting numerous and extensive hearings, Magistrate Judge Alexander was persuaded of the uncontrollable dangerousness of Simone and Gioacchini, who are specifically alleged to have victimized D'Amelio previously. The Court detained Simone and

---

[2]As discussed below, this Affidavit is incorporated herein by reference. A courtesy copy is provided.

-3-

Gioacchini by Order dated January 16, 2004: "the Court finds by a preponderance of the evidence that the defendants, despite their ties to the community, pose a significant risk of flight and the means to flee" and "[t]he Court also finds by clear and convincing evidence that there are no conditions of release which could assure the safety of the community if they were released pending trial." (Jan. 16, 2004 Ord. at 8.) Simone and Gioacchini have appealed Magistrate Judge Alexander's ruling to Judge Wolf.

On December 30, 2003, in conformity with the Local Rules, the government provided 28-day automatic discovery to D'Amelio's counsel. The government declined to provide certain information ordinarily required by D. Mass. L.R. 1162(B)(1) and filed a copy of the declination letter with the Court, pursuant to L.R. 116.6(A). Despite that declination, the government did provide extensive related information, including without limitation:

(1) copies of dated proffer letters that redacted the name of the witness and its counsel; and

(2) copies of dated plea agreements, redacting the name of the witnesses and their counsel, but providing explicit U.S. Sentencing Guideline calculations, maximum penalty provisions, agreed-upon sentencing recommendations, cooperation and immunity provisions.

On February 12, 2004, D'Amelio filed his Motion, effectually

-4-

complaining that the government had improperly withheld otherwise discoverable information. (Compare, e.g., Feb. 12, 2004 Mot. at 2 ("Parenthetically, undersigned counsel thought that, under the Local Rules, the appropriate time was now.") with id. ("What is clear is that the government feels comfortable invoking the declination procedure without articulating a single concrete reason, comfortable in the view that a court may do no more than order it to respond.").) For the reasons which follow, this Court should deny D'Amelio's Motion.

## II. Discussion

Local Rules 116.1(C)(2) and 116.2(B)(1) together require in effect that the government disclose within 28 days of arraignment certain information defined as materially exculpatory under L.R. 116.2(A). In particular, with relation to D'Amelio's Motion, such information includes certain promises, rewards or inducements given to "any witness whom the government anticipates calling in its case-in-chief." See L.R. 116.2(B)(1)(c). However, L.R. 116.6(A) specifically authorizes a party to decline to "make any of the disclosures required by these Local Rules" "[i]f in the judgment of a party it would be detrimental to the interests of justice" to do so, provided that "the opposing party [is] advised in writing, with a copy filed in the Clerk's Office, of the specific matters on which disclosure is declined and the

-5-

reasons for declining."  (See L.R. 116.6(A).)

On December 30, 2003, the government invoked the foregoing declination procedure regarding three potential prosecution witnesses.  Based on the information previously set forth regarding the interrelatedness of this case with Crim. No. 03-10356-MLW, and the December 3, 2003 Affidavit of Detective Lieutenant John Tutungian in Support of Pretrial Detention filed in Crim. No. 03-10356-MLW, incorporated herein by reference, the Court and D'Amelio may readily identify the safety considerations which motivated the government's declination: D'Amelio is alleged in this case to have operated an illegal gambling operation.  He is alleged in the Simone Indictment to have operated that business under permission from LCN Soldiers Simone and Gioacchini who repeatedly extorted rent or tribute payments from him.  Consequently, prosecution witnesses who can inculpate D'Amelio on the illegal gambling charges in this case can likewise provide inculpatory information against LCN Soldiers Simone and Gioacchini in Crim. No. 03-10356-MLW.  As described by Det. Lt. Tutungian and effectively found by Magistrate Judge Alexander, the ongoing safety of those witnesses would be sacrificed if they were to be identified to any Member of the LCN, each of whom has taken a blood loyalty oath to take whatever steps necessary, including murder, to protect the LCN.  Simone has previously pleaded guilty to a gruesome LCN-sponsored murder and Gioacchini

-6-

has previously been convicted of LCN-related racketeering. Nevertheless, D'Amelio now complains of the government's declination to identify other potential LCN victims.

Although somewhat difficult to parse, D'Amelio's various complaints ostensibly distill into a single discovery claim - when must the government disclose the identities of its prosecution witnesses? D'Amelio gripes alternatively about the government's alleged failure to identify "what the immunity protected [a witness] from", or about the government's alleged failure in "not disclosing for what crimes" a certain "proffer agreement and a plea agreement" relate, or that the "appropriate time [for those disclosures] is now." (D'Amelio Mot. at 1-2.) Nevertheless, a cursory review of the materials already furnished by the government provides answers to many of D'Amelio's complaints.

For instance, the provided Immunity Order states in its unequivocal standard form language that Carmen Campanaro "shall give testimony . . . as to all matters about which he may be interrogated" and that "no testimony or other information . . . may be used against Carmen Campanaro in any criminal case except a prosecution for perjury, giving a false statement or otherwise failing to comply with this Order," consistent with 18 U.S.C. §§6602 and 6003, which are cited by that Order. In other words, the Order immunizes Mr. Campanaro from substantially everything,

-7-

provided that he testify truthfully.[3]

Similarly, the redacted plea agreements, consistent with the government's standard form language, each contain agreed-upon calculations under the U.S. Sentencing Guidelines ("USSG"), including a citation of the particularly applicable USSG provision. For example, one of the November 6, 2001 plea agreements states that USSG §2E2.1 applies. The title of USSG §2E2.1 is "Making or Financing an Extortionate extension of Credit; Collecting and Extenstion of Credit by Extortionate Means" and its Commentary notes that the applicable statutory provisions are 18 U.S.C. §§892-894. See USSG §2E2.1. Accordingly, D'Amelio knows that this plea agreement relates to somebody's guilty plea to an extortion offense.

Likewise, two of the other November 6, 2001 plea agreements contain a similar USSG calculation provision and an additional provision of greater identifying significance: it identifies the applicable fine as "the greater of $500,000 or twice the value of the property involved in the transaction," (Nov. 6, 2001 Ltrs. at

---

[3] In Mr. Campanaro's case, the government did not believe that safety considerations counseled against disclosure of his identity, where he is D'Amelio's father-in-law. Consequently, the government made the appropriate disclosure of which D'Amelio complains nonetheless. (See D'Amelio's Mot. at 1 (nothing that "the government identifies a single witness, disclosing only that the witness benefitted from an immunity order (but not what the immunity protected him from)"). The government's determination was otherwise with respect to those people identified as Witnesses 1-3.

2), a fine provision peculiar to the money-laundering provisions of 18 U.S.C. §1956. See 18 U.S.C. §1956(a)(2). These provisions make plain that the agreements apply to money-laundering pleas.

Finally, the proffer letters in each instance follow the government's standard form letter immunity. These documents have existed in substantially unaltered form for a number of years. The government has redacted only the information which would reveal the identity of the people making the proffer.[4]

D'Amelio nonetheless seeks more information - the information which would essentially identify these three prosecution witnesses.[5] However, "[c]ontrary to [D'Amelio's] implicit assumption, there is no constitutional or statutory requirement that the identity of prosecution witnesses be disclosed before trial." United States v. Bello-Perez, 977 F.2d 664, 670 (1st Cir. 1992). See also United States v. Murphy, 480 F.2d 256, 259 (1st Cir. 1973) (affirming district judge's rejection of "Defendant['s] . . . conten[tion] that the trial court erred in denying in whole or in part his pre-trial motions for a list of all persons expected to testify at trial, for

---

[4]Admittedly, the government declined to provide criminal histories for the three controverted witnesses, yet D'Amelio makes no complaint in that regard.

[5]Indeed, this information is likely already known to D'Amelio who, while last in court, insisted to his counsel in the courtroom that the government be forced to disclose the identities of prosecution witnesses whose identities D'Amelio already suspected.

disclosure of any immunity awarded the witnesses who either testified before the grand jury or were expected to testify at trial, and for the production of all exculpatory material in the possession of the government"). Consistently, L.R. 117.1(A)(8)(a) contemplates that the government will provide a defendant with a witness list seven days before the trial date.

The government, as set forth in its December 30, 2003 letter filed with this Court, seeks merely to delay - not avoid - disclosure of a narrow band of particularly sensitive information pertaining to the identities of three potential trial witnesses. D'Amelio will nevertheless have sufficient opportunity to use the information effectively if, as the government proposes, the information is provided with analogous information under L.R. 116.2(B)(2) twenty-one days before trial. Cf. United States v. Olmstead, 832 F.2d 642, 649 (1st Cir. 1987) ("We first note that we deal here with delayed disclosure rather than with total suppression. In such cases, reversal will be granted only where defendants were denied an opportunity to use the evidence effectively.").

### III. Conclusion

WHEREFORE, the government respectfully requests that this Court deny D'Amelio's Motion in full and instead permit the government to disclose the previously declined information twenty-one days prior to trial.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By: /s/ Colin Owyang
ERNEST DiNISCO
COLIN OWYANG
Assistant U.S. Attorneys

### CERTIFICATE OF SERVICE

I, Colin Owyang, do hereby certify that I served a copy of the foregoing pleading by interoffice mail on February 17, 2004 on counsel for defendant Carmen D'Amelio, Charles P. McGinty, Esq., Federal Defender Office, 408 Atlantic Avenue, Boston, Massachusetts.

/s/ Colin Owyang
Colin Owyang
Assistant U.S. Attorney