UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIMINAL NO.: 03-10355-DPW |
| | ) | |
| v. | ) | VIOLATIONS: |
| | ) | **18 U.S.C. § 1955** – Illegal |
| CARMINE T. D'AMELIO, | ) | Gambling Business |
| a/k/a Junior, | ) | **18 U.S.C. § 1956(h)** – Money |
| Defendant | ) | Laundering Conspiracy |
| | ) | **18 U.S.C. § 371** – Klein |
| | ) | Conspiracy |
| | ) | **18 U.S.C. § 982** – Forfeiture |
| | | **18 U.S.C. § 2** – Aiding and |
| | | Abetting |

## FIRST SUPERSEDING INDICTMENT

The Grand Jury charges that:

### COUNT ONE

(18 U.S.C. §§ 1955 and 2 – Illegal Gambling Business)

From in or before 1996 and continuing to in or about January

2001, in the District of Massachusetts and elsewhere, the

defendant,

### CARMINE D'AMELIO, a/k/a JUNIOR,

did unlawfully, willfully, and knowingly conduct, finance,

manage, supervise, direct, and own all or part of an illegal

gambling business, to wit, a sports betting business, in

violation of the laws of the Commonwealth of Massachusetts, in

which said business was conducted (Massachusetts General Laws,

Chapter 271, Sections, 16A, 17, 17A, and 22), which illegal

1

gambling business involved five or more persons who conducted, financed, managed, supervised, directed, and owned all or part thereof and remained in substantially continuous operation in excess of thirty (30) days and had a gross revenue of two thousand dollars ($2,000) in a single day.

All in violation of Title 18, United States Code, Sections 1955 and 2.

2

## COUNT TWO

(18 U.S.C. §§ 1956(h) and 2 - Money Laundering Conspiracy)

At times material to the allegations contained in this Count:

1. Defendant CARMINE D'AMELIO and his partners conducted, financed, managed, owned, operated, directed, and supervised a sports bookmaking business in violation of Massachusetts law, from locations in Saugus, Winthrop, Revere, and East Boston, Massachusetts.

2. Defendant CARMINE D'AMELIO resided with his wife at 20 Swan Avenue in East Boston, Massachusetts.

3. Co-conspirators and others known to the Grand Jury were employed by the sports bookmaking business to accept wagers and collect monies owed to the business.

4. From in or before January 1995, and continuously thereafter up to and including February 1, 2001, in the District of Massachusetts and elsewhere, the defendant:

### CARMINE D'AMELIO, a/k/a JUNIOR,

did unlawfully and knowingly conspire with others known and unknown to the Grand Jury:

5. To conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, which financial transactions in fact involved the proceeds of a specified unlawful activity, that is, an illegal gambling

3

business, in violation of 18 U.S.C. § 1955 and M.G.L. Ch. 271, §§
16A, 17, 17A, and 22, knowing that the property involved in the
financial transactions represented the proceeds of some form of
unlawful activity, with the intent to promote the carrying on of
that specified unlawful activity, in violation of 18 U.S.C. §
1956(a)(1)(A)(i), with intent to engage in conduct constituting a
violation of section 7201 and 7206 of the Internal Revenue Code
of 1986, in violation of 18 U.S.C. § 1956(a)(1)(A)(ii), and
knowing that the transactions were designed, in whole and in
part, to conceal and disguise the nature, location, source,
ownership, and control of the proceeds of that specified unlawful
activity, in violation of 18 U.S.C. § 1956(a)(1)(B)(i); and

6.   Within the United States, knowingly to engage and
attempt to engage in monetary transactions in criminally derived
property of a value greater than $10,000, which was derived from
specified unlawful activity, that is, an illegal gambling
business, in violation of 18 U.S.C. § 1955 and M.G.L. Ch. 271, §§
16A, 17, 17A, 20 and 22, all in violation of 18 U.S.C. § 1957.

## OBJECTIVE OF THE CONSPIRACY

7.   The predominant purpose of the conspiracy was to promote
an illegal sports betting business by collecting, spending, and
reinvesting revenues from bettors.   Additional objectives
included concealing and disguising the illegal gambling revenues
derived from the wagering business to give those revenues the

4

appearance of legitimacy, by paying all accounts, obligations, and bills of the gambling business, at least in part, with the revenues derived from the sports wagering business. It was also a purpose of the conspiracy to provide the owners and operators of the wagering business with state of the art technical equipment to enable the betting business to place wagers with less sophisticated competitors and to avoid scrutiny by law enforcement.

## MANNER AND MEANS OF THE CONSPIRACY

8. It was part of the conspiracy that conspirators employed writers and agents to accept gambling wagers from customers and to pay off and collect cash from customers, depending on whether the customers won or lost.

9. It was further part of the conspiracy that conspirators maintained locations and provided equipment for writers and agents to conduct a sports betting business.

10. It was further part of the conspiracy that conspirators accepted and paid all betting accounts exclusively in cash.

11. It was further part of the conspiracy that conspirators purchased machines and equipment, paid employees to collect money from bettors, and paid rent and mortgages on property used by them with revenues derived from the sports betting business.

12. It was further part of the conspiracy that conspirators stored and concealed large amounts of currency, including cash

proceeds from their illegal gambling business, in safe deposit boxes and elsewhere, both to have the cash available for use in the gambling business and to evade scrutiny by law enforcement and the Internal Revenue Service.

## OVERT ACTS

13.   In furtherance of the conspiracy, and to effect the objects thereof, the following overt acts, among others, were committed in the District of Massachusetts and elsewhere:

(a)   In or before 1997, the defendant, CARMINE D'AMELIO, and a co-conspirator in the illegal gambling business, rented a safe deposit box at the East Boston Savings Bank located at 651 Bennington Street, East Boston and used the box to keep and maintain cash generated by the gambling business.

(b)   In or about March 1997, the defendant CARMINE D'AMELIO, caused an individual known to the Grand Jury to rent a safe deposit box in that person's name and to provide the defendant CARMINE D'AMELIO and a third person known to the Grand Jury, with access to that safe deposit box.

(c)   On October 29, 1997, the defendant, CARMINE D'AMELIO, removed cash derived from the gambling business from a safe deposit box rented by him at the East Boston Savings Bank.

(d)   On the same date in October, 1997, the defendant CARMINE D'AMELIO, caused cash from the gambling business to be transferred to the safe deposit box that had been rented by

6

another person known to the Grand Jury.

(e)    In January 1998, the defendant, CARMINE D'AMELIO, and another co-conspirator settled-up the weekly balances due and owing to the gambling business.

(f)    In February 1998, the defendant, CARMINE D'AMELIO, collected cash from gambling debtors and used those monies to pay his personal living expenses.

(g)    In April 1998, a co-conspirator known to the Grand Jury purchased a money order with the proceeds of the gambling business, which he used to pay for an on-line computer service known as the "Don Best System" that D'Amelio and his partners in the gambling business subsequently used in the operation of the gambling business.

(h)    In January 1999, a co-conspirator known to the Grand Jury purchased a money order with the proceeds of the gambling business, which he used to pay for an on-line computer service known as the "Don Best System" that D'Amelio and his partners in the gambling business subsequently used in the operation of the gambling business.

(i)    In July 1999, the defendant, CARMINE D'AMELIO, used cash revenues from gambling to pay monthly expenditures of the gambling business.

(j)    On or about August 1, 1999, the defendant, CARMINE D'AMELIO, paid a monthly obligation owed by the gambling

7

business.

(k)    On or about November 1, 1999, a conspirator used gambling proceeds to pay rental expenses for locations used by the gambling business.

(l)    In February 2000, a co-conspirator known to the Grand Jury purchased a money order with the proceeds of the gambling business, which he used to pay paid for an on-line computer service known as the "Don Best System" that D'Amelio and his partners in the gambling business subsequently used in the operation of the gambling business.

(m)    On February 24, 2000, the defendant, CARMINE D'AMELIO, while vacationing in Florida, telephoned a co-conspirator of the gambling business and instructed that person to provide proceeds from the gambling business to D'AMELIO's wife.

(n)    On March 3, 2000, the defendant, CARMINE D'AMELIO, instructed another co-conspirator to pay an employee of the gambling business in cash.

(o)    On March 12, 2000, the defendant, CARMINE D'AMELIO, while vacationing in Florida, telephoned a co-conspirator and asked about the status of the gambling business.

(p)    On March 24, 2000, the defendant, CARMINE D'AMELIO, told a co-conspirator that he had approximately $35,000 cash in gambling proceeds hidden in his home.

(q)   On or about March 25, 2000, the defendant, CARMINE D'AMELIO, told a co-conspirator that during a search conducted pursuant to a search warrant, the Massachusetts State Police had "missed" the cash which he had hidden in a figurine in the attic of his home.

(r)   On or about April 2000, the defendant, CARMINE D'AMELIO, borrowed cash at a usurious rate of interest in order to continue the operation of the gambling business.

(s)   On or about July 2000, the defendant, CARMINE D'AMELIO, forgave a gambling debt owed to the business.

(t)   In July 2000, the defendant, CARMINE D'AMELIO, used gambling revenues to pay a monthly expenditure of the gambling business.

(u)   On or about January 1, 2001, the defendant, CARMINE D'AMELIO, used gambling revenues to pay a monthly obligation of the gambling business.

All in violation of Title 18, United States Code, Sections 1956(h) and 2.

9

## COUNT THREE

(18 U.S.C. § 371 - Conspiracy to Defraud the I.R.S.)

1.    The allegations of Paragraphs 1 through 3 of Count Two are incorporated herein by reference.

2.    From a time not known to the Grand Jury, but at least prior to January 1, 1996, and continuing through at least April 2001, in the District of Massachusetts and elsewhere,

### CARMINE D'AMELIO, a/k/a JUNIOR,

defendant herein, did knowingly, willfully, and unlawfully combine, conspire, confederate, and agree with one another, and with others known to the Grand Jury, to defraud the United States by impeding, impairing, obstructing, and defeating the lawful government functions of the Internal Revenue Service of the United States Treasury Department in the ascertainment, computation, assessment, and collection of the revenue; to wit, individual income taxes.

### Manner and Means of the Conspiracy

3.    The manner and means by which the conspiracy was sought to be accomplished included, among others, the following:

(a)    Defendant CARMINE D'AMELIO regularly received substantial cash payments derived from his illegal sports bookmaking business.  The defendant and others known to the Grand Jury specifically underreported cash profits received from the gambling business and created false and misleading accounting of

10

the income derived from the gambling business by underreporting
it on D'AMELIO's federal income tax returns as "miscellaneous
income" and "other income". By underreporting the income
received from his illegal cash business, the defendant, CARMINE
D'AMELIO sought to avoid scrutiny by the Internal Revenue
Service.

(b) The defendant, CARMINE D'AMELIO, knew that the
personal tax returns he filed during the period of the operation
of the illegal gambling business were false.

(c)  In an attempt to evade his own personal income
taxes, CARMINE D'AMELIO failed to report accurately gambling
revenues received by him on his individual income tax returns.

(d)  As a result of the conspiracy, CARMINE D'AMELIO
evaded substantial individual income taxes.

## OVERT ACTS

4.  In furtherance of the conspiracy, and to effect the
objects thereof, the following overt acts were committed in the
District of Massachusetts and elsewhere:

(a)  On or about March 1997, the defendant, CARMINE
D'AMELIO, and another person known to the Grand Jury, discussed
the amount of income from the gambling business that they would
report on their respective income tax returns.

(b)  In or about October 29, 1997, the defendant,
CARMINE D'AMELIO, caused large sums of currency, which

11

represented profits received from the illegal gambling business, to be placed in a safe deposit box rented in the name of another person.

(c)   On or about March 1998, the defendant, CARMINE D'AMELIO, and another person known to the Grand Jury discussed the amount of income from the gambling business that they would report on their respective income tax returns.

(d)   On or about March 1999, the defendant, CARMINE D'AMELIO, and another person known to the Grand Jury discussed the amount of income from the gambling business that they would report on their respective income tax returns.

(e)   On February 26, 2000, the defendant, CARMINE D'AMELIO, and another person discussed the amount of income from the gambling business that they would report on their respective income tax returns.

(f)   On or about March 24, 2000, the defendant, CARMINE D'AMELIO, concealed in his attic a substantial sum of cash which represented proceeds of the gambling business.

(g)   On or about March 28, 2000, the defendant, CARMINE D'AMELIO, transferred cash from his attic to another location.

(h)   On or about the following dates, CARMINE DAMELIO caused false individual income tax returns, Forms 1040, to be filed on his behalf:

1.   April 15, 1996;

12

2.  April 15, 1997;

3.  April 15, 1998;

4.  April 15, 1999;

5.  April 15, 2000; and

6.  April 15, 2001.

All in violation of Title 18, United States Code, Section 371.

## **GAMBLING PROPERTY FORFEITURE ALLEGATIONS**

(18 U.S.C. § 1955(d) and 28 U.S.C. § 2461(c))

1.   The allegations of Count One of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 1955(d), and Title 28, United States Code, Section 2461(c).

2.   As the result of the offense alleged in Count One, the defendant,

### **CARMINE D'AMELIO, a/k/a JUNIOR,**

shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 1955(d), and Title 28, United States Code, Section 2461(c), all property, including money, used in the illegal gambling business charged in Count One, including, without limitation, the following:

> (a)   The real property, with all improvements thereon and rights appertaining thereto, located at 20 Swan Avenue, East Boston, Massachusetts, title to which appears at Book 9685, Page 20, of the Suffolk County Registry of Deeds; and

> (b)   Approximately $750,000 in United States Currency.

3.   If any of the forfeitable property described in paragraph 2 above, as a result of any act or omission of the defendant:

14

    (a)   Cannot be located upon the exercise of due
          diligence;

    (b)   Has been transferred or sold to, or deposited
          with, a third party;

    (c)   Has been placed beyond the jurisdiction of the
          Court;

    (d)   Has been substantially diminished in value; or

    (e)   Has been commingled with other property which
          cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 21,
United States Code, Section 853(p), incorporated by Title 28,
United States Code, Section 2461(c), to seek forfeiture of any
other property of the defendant up to the value of the property
described in subparagraphs (a) through (e) of this paragraph.

All pursuant to Title 18, United States Code, Section
1955(d), and Title 28, United States Code, Section 2461(c).

15

## MONEY LAUNDERING FORFEITURE ALLEGATIONS

(18 U.S.C. § 982)

1.    The allegations of Count Two of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 982(a)(1).

2.    As the result of the offense alleged in Count Two, the defendant,

### CARMINE D'AMELIO, a/k/a JUNIOR,

shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(1), all property, real and personal involved in such offense, and all property traceable to such property, including, without limitation, the following:

> (a)    The real property, with all improvements thereon and rights appertaining thereto, located at 20 Swan Avenue, East Boston, Massachusetts, title to which appears at Book 9685, Page 20, of the Suffolk County Registry of Deeds; and
>
> (b)    Seven hundred fifty thousand ($750,000) dollars in United States Currency.

3.    If any of the forfeitable property described in paragraph 2 above, as a result of any act or omission of the defendant:

> (a)    Cannot be located upon the exercise of due

16

diligence;

(b)    Has been transferred or sold to, or deposited
with, a third party;

(c)    Has been placed beyond the jurisdiction of the
Court;

(d)    Has been substantially diminished in value; or

(e)    Has been commingled with other property which
cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 18,
United States Code, Section 982(b)(1), incorporating Title 21,
United States Code, Section 853(p), to seek forfeiture of any
other property of the defendant up to the value of the property
described in subparagraphs (a) through (e) of this paragraph.

All pursuant to Title 18, United States Code, Section
982(a)(1).

## NOTICE OF ADDITIONAL FACTORS

The Grand Jury further charges that:

1. With respect to the offense described in Count One of this indictment, the defendant

### CARMINE D'AMELIO, a/k/a JUNIOR,

was an organizer, leader, manager, and supervisor of a criminal activity that involved five or more participants and was otherwise extensive, as described in USSG §§3B1.1(a) and (b).

2. With respect to the offense described in Count Two of this indictment, the defendant

### CARMINE D'AMELIO, a/k/a JUNIOR,

was an organizer, leader, manager, and supervisor of a criminal activity that involved five or more participants and was otherwise extensive, as described in USSG §§3B1.1(a) and (b).

3. With respect to the offense described in Count Two of the indictment, the defendant

### CARMINE D'AMELIO, a/k/a JUNIOR,

committed, and is accountable pursuant to USSG §1B1.3(a)(1)(A) for, the underlying offense from which the laundered funds were derived, as described in USSG §2S1.1(a)(1).

4 With respect to the offense described in Count Three of the indictment, the defendant

### CARMINE D'AMELIO, a/k/a JUNIOR,

committed an offense in which the tax loss was more than $200,000

18

but not more than $400,000, as described in USSG §§2T1.9(a)(1),

2T1.1(a)(1) and 2T4.1(G).

A TRUE BILL

_____
FOREPERSON OF THE GRAND JURY

_____
ERNEST S. DINISCO
Assistant U.S. Attorney

DISTRICT OF MASSACHUSETTS:    September 1    , 2004

Returned into the District Court by Grand Jurors and filed.

_____
DEPUTY CLERK
3:20pm

20

**Criminal Case Cover Sheet**      **U.S. District Court - District of Massachusetts**

%JS 45 (5/97) - (Revised U.S.D.C. MA 2/7/02)

**Place of Offense:**    **Category No.** II    **Investigating Agency** FBI

**City**   Boston      **Related Case Information:**

**County**   Suffolk

Superseding Ind./ Inf.   Yes    Case No.   03-10355-DPW
Same Defendant   Yes    New Defendant   No
Magistrate Judge Case Number
Search Warrant Case Number
R 20/R 40 from District of

**Defendant Information:**

Defendant Name   Carmine T. D'Amelio    Juvenile:   ☐ Yes   X No

Alias Name   Junior

Address   20 Swan Avenue, East Boston, MA

Birthdate: 1953   SS # 5485   Sex: M   Race: white   Nationalit USA

**Defense Counsel if known:**   Charles P. McGinty    Address Federal Defender Office

Bar Number   333480      408 Atlantic Ave, 3d Floor, Boston

**U.S. Attorney Information:**

AUSA   Ernest DiNisco    Bar Number if applicable

**Interpreter:**   ☐ Yes   X No    List language and/or dialect:

**Matter to be SEALED:**   ☐ Yes   X No

☐ Warrant Requested    X Regular Process    ☐ In Custody

**Location Status:**

Arrest Date

☐ Already in Federal Custody as of    in
☐ Already in State Custody at    ☐ Serving Sentence    ☐ Awaiting Trial
X On Pretrial Release: Ordered by: Chief MJ Bowler   on   12/1/03

**Charging Document:**   ☐ Complaint    ☐ Information    X Indictment

**Total # of Counts:**   ☐ Petty   ☐ Misdemeanor   X Felony   3

Continue on Page 2 for Entry of U.S.C. Citations

X   **I hereby certify that the case numbers of any prior proceedings before a Magistrate Judge are accurately set forth above.**

Date:   September 1, 2004    Signature of AUSA:

**District Court Case Number**  (To be filled in by deputy clerk): _____

**Name of Defendant**    Carmine T. D'Amelio, a/k/a Junior

## U.S.C. Citations

| **Index Key/Code** | **Description of Offense Charged** | **Count Numbers** |
|---|---|---|
| Set 1  18 U.S.C. §§ 1955, 2 | Illegal Gambling Business | 1 |
| Set 2  18 USC §§ 1956(h), 2 | Money Laundering Conspiracy | 2 |
| Set 3  18 USC §371 | Klein Conspiracy | 3 |
| Set 4  18 USC §1955(d) | Forfeiture | |
| Set 5  28 USC §2461(c) | Forfeiture | |
| Set 6  18 USC § 982 | Forfeiture | |
| Set 7 | | |
| Set 8 | | |
| Set 9 | | |
| Set 10 | | |
| Set 11 | | |
| Set 12 | | |
| Set 13 | | |
| Set 14 | | |
| Set 15 | | |

**ADDITIONAL INFORMATION:** _____

_____

_____

_____